IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

**FILED**

JAN 1 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| **MEENOO CHAHBAZI**<br>2298 17th Street N.W. Apt. 2<br>Washington, D.C. 20009-4043<br><br>and<br><br>**SHABEH JOMEH D.C.**<br>c/o Neda Nabavi<br>440 S. LaSalle Street, 20th Floor<br>Chicago, I.L. 60605<br><br>Plaintiffs,<br><br>v.<br><br>**JAMIE MICHAEL HESS**<br>9181 I Street N.E.<br>Washington, D.C. 20002<br><br>Defendant. | Case No. _____<br><br>Case: 1:08-cv-00047<br>Assigned To : Bates, John D.<br>Assign. Date : 1/10/2008<br>Description: Civil Rights-Non-Employ. |

## COMPLAINT FOR DAMAGES

### INTRODUCTION

1. For more than two years, Shabeh Jomeh D.C., a social-networking organization of Persian/Iranian-American professionals, held its gatherings on the third Thursday of every month at Blue Gin, a Georgetown night club.

2. Shabeh Jomeh D.C. and Blue Gin made for a good match. For Shabeh Jomeh D.C., Blue Gin provided a fine location, a roomy, stylish atmosphere, and welcoming service. For Blue Gin, Shabeh Jomeh D.C. provided a well-heeled, steady book of business that could be counted on to bring thousands of dollars to the club every month.

3. In 2006, Jamie Michael Hess began working at Blue Gin, and suddenly Shabeh Jomeh was no longer welcome at the club. Mr. Hess, a self-styled "guru of nightlife" was hired by Blue Gin to promote Thursday nights at the club.[1] Blue Gin then directed Shabeh Jomeh D.C. to discuss the terms on which future events might be held at Blue Gin. Following this directive, Shabeh Jomeh D.C.'s representative, Ms. Meenoo Chahbazi, approached Mr. Hess about formalizing Shabeh Jomeh D.C.'s then existing understanding with Blue Gin – namely, that Shabeh Jomeh D.C. would continue to bring its business to Blue Gin on the third Thursday of each month, and Blue Gin would continue to accommodate Shabeh Jomeh D.C.

4. During their meeting, Mr. Hess told Ms. Chahbazi that he was hired by Blue Gin to bring a white crowd to Blue Gin and that they wanted to cater more to the white crowd which is predominant in Georgetown. Mr. Hess then insisted on and imposed discriminatory terms and conditions on Shabeh Jomeh D.C., including requirements that if Shabeh Jomeh D.C. members wished to continue to meet at Blue Gin, they would have to segregate themselves from the preferred, white patrons.

5. Because this mode of doing business has no place in Georgetown, the District of Columbia, or America, and because Mr. Hess's conduct violates the Civil Rights laws of the United States and the District of Columbia, this suit follows.

**PARTIES**

6. **Plaintiff Meenoo Chahbazi.** Ms. Chahbazi is a person of Persian and Middle Eastern race and descent domiciled in the District of Columbia. At all relevant times, Ms.

---

[1] *See* http://www.jamiehess.com/About_Jamie.html (last visited Apr. 25, 2007.)

Chahbazi was a representative of Shabeh Jomeh D.C. and was authorized to negotiate and/or enter into a contract on behalf of Shabeh Jomeh D.C.

7.  **Plaintiff Shabeh Jomeh D.C.**  Shabeh Jomeh D.C. is the local affiliate of Shabeh Jomeh, a social networking organization that sponsors "a monthly gathering of Iranian professionals living in the metropolitan areas of major cities." The organization is comprised of predominantly Persian and Middle Eastern professionals. Its central purpose is "to improve upon existing professional and social relations," and to "be the platform for exchanging ideas and improving Iranians' professional standing in our communities." (www.shabehjomeh.com/aboutus.html). Shabeh Jomeh D.C.'s gatherings are non-political and non-religious events that are open to all professionals. In addition to its social-network function, Shabeh Jomeh D.C. is engaged in many philanthropic efforts. Shabeh Jomeh D.C. was founded in July 2003.[2]

8.  **Defendant Jamie Michael Hess.**  Defendant Hess is an individual domiciled in the District of Columbia, and has resided in the District of Columbia at all relevant times. Mr. Hess has also primarily conducted his promotions business in the District of Columbia. In or about late 2006, Blue Gin entered into an employment or agency relationship with Mr. Hess. Mr. Hess held himself out as a person authorized to act as an agent for Blue Gin and to negotiate and/or enter into contracts on behalf of Blue Gin relating to Shabeh Jomeh D.C. and others.

---

[2] Literally, Shabeh Jomeh translates as "night of Friday," which refers to "Friday eve" or Thursday night. In Iran, Shabeh Jomeh has a number of significances. Shabeh Jomeh is the beginning of the weekend for Iranians. Shabeh Jomeh, traditionally, is the night to go out or entertain family and/or friends. The name of the network is designed to globally link Iranians and other interested individuals.

## JURISDICTION AND VENUE

9. This court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b). All of the acts and transactions alleged herein occurred in the District of Columbia.

## FACTUAL ALLEGATIONS

11. Shabeh Jomeh was founded in New York City in February 2000. The creators wanted to establish a forum for Iranian-American professionals to socialize, engage in professional networking, and exchange ideas. The organization's interest was in "community building" not "exclusivity." (www.shabehjomeh.com/aboutus.html).

12. In addition to New York and the District of Columbia, Shabeh Jomeh has chapters in Chicago, Los Angeles, San Francisco, San Jose, Seattle, Boston, Atlanta, Dallas, Honolulu, and Miami.

13. Since its formation in July 2003, Shabeh Jomeh D.C. has held events, generally on a monthly basis, at the Blue Gin nightclub in the Georgetown section of Washington, D.C.

14. An upscale club located in Georgetown's hub near Wisconsin and M streets, Blue Gin was a good match for the professionals that attended Shabeh Jomeh D.C. gatherings. In addition, the club was not particularly crowded on Thursday nights when Shabeh Jomeh D.C. held its monthly events.

15. Prior to Blue Gin's hiring of Mr. Hess, Shabeh Jomeh D.C. and Blue Gin enjoyed good relations. Shabeh Jomeh D.C. brought substantial business to Blue Gin with its monthly

events (averaging 35-50 members at each), and, in turn, Blue Gin accommodated Shabeh Jomeh D.C. with appropriate staffing and service.

16. During these events, Blue Gin did not close its doors to the public or turn away other patrons on the basis that Shabeh Jomeh D.C. was utilizing the club for its gatherings. Blue Gin did not reserve space for the exclusive use of Shabeh Jomeh D.C. Nor did it restrict Shabeh Jomeh D.C.'s access to any public part of the club during these events. Rather, Shabeh Jomeh D.C. and Blue Gin's other customers were permitted access to all the public portions of the establishment.

17. In addition to these monthly events, Shabeh Jomeh D.C. also held larger parties (*e.g.*, holiday parties) at Blue Gin, bringing even more guests and revenue to Blue Gin. These parties took place on Thursday evenings approximately once per quarter. At some of these events, Blue Gin agreed to pay the cost of a DJ out of the proceeds that the event generated. Even at these events, however, Shabeh Jomeh D.C. shared the space with Blue Gin's other patrons.

18. Prior to Mr. Hess's arrival (with the exception of two meetings, where Shabeh Jomeh D.C. experimented with other venues which they found less attractive than Blue Gin), Shabeh Jomeh D.C. had held all of its monthly and quarterly events at Blue Gin.

19. In late 2006, Blue Gin hired or engaged Mr. Hess to promote Thursday nights. On information and belief, Mr. Hess has stated, in sum or substance, that Blue Gin hired him to bring a white crowd to the club.

20. In December 2006, Ms. Chahbazi was informed by Blue Gin staff that Blue Gin had hired Mr. Hess to be the Thursday night promoter and that Shabeh Jomeh D.C. would have to negotiate the terms of its future relationship with Blue Gin directly with Mr. Hess.

21. Ms. Chahbazi thereby arranged to meet with Mr. Hess, and did meet with Mr. Hess, on January 11, 2007 at Blue Gin.

22. Mr. Hess represented to Ms. Chahbazi that he was authorized to negotiate a contract with Shabeh Jomeh D.C. on Blue Gin's behalf and to bind Blue Gin to a negotiated agreement.

23. Mr. Hess told Ms. Chahbazi, in sum or substance, that Georgetown is a white neighborhood and that Blue Gin hired him to bring in a white crowd.

24. In particular, Mr. Hess, in sum or substance, told Ms. Chahbazi:

> As you know, Georgetown is a predominantly white neighborhood. Blue Gin hired me because they want to cater more to that predominantly white crowd, and they know that I can bring them that crowd.

25. Mr. Hess further told Ms. Chahbazi, in sum or substance, that the District of Columbia is segregated.

26. In particular, Mr. Hess, in sum or substance told Ms. Chahbazi:

> D.C. is different than New York. In New York everyone hangs out together, but D.C. is segregated. Latinos hang out with Latinos, Blacks hang out with Blacks, and Whites hang out with Whites.

27. Consistent with his beliefs regarding our nation's capitol and race-mixing, Mr. Hess expressed that Shabeh Jomeh's members would not blend with the white Georgetown crowd that he wished to cater to on Thursday nights.

6

28. Expressly recognizing the profits that Shabeh Jomeh D.C. brought to the Blue Gin, Mr. Hess stated in sum or substance that the group could continue to patronize Blue Gin on Thursday nights if it were willing to be segregated from Mr. Hess's predominately white crowd on the main floor, by keeping to the second floor.

29. Mr. Hess's overtly discriminatory offer, however, was contingent on Shabeh Jomeh D.C. guaranteeing $3,200.00 in business each time the group held its monthly meeting at Blue Gin, with Shabeh Jomeh D.C. required to make up any shortfall. Shabeh Jomeh D.C. had never been required to make such guarantees in the past. Moreover, because Shabeh Jomeh D.C. simply organized events at which the participants paid for their own food and drink, it did not have the desire or ability to make such a guarantee.

30. Instead, Ms. Chahbazi asked Mr. Hess, more than once, if Shabeh Jomeh D.C. could share the first floor of the Blue Gin with his crowd for one Thursday night of each month. Ms. Chahbazi told Mr. Hess that the group did not want to be segregated from white patrons, or from any other of the club's patrons. Nevertheless, Mr. Hess refused to allow the group to share the first floor of the Blue Gin with his other patrons.

31. Ms. Chahbazi, on Shabeh Jomeh D.C.'s behalf, refused to accept the discriminatory terms offered by Mr. Hess.

32. As a result of the actions of Mr. Hess, Shabeh Jomeh D.C. has had to relocate its monthly events to other locations and has been unable to find a venue as desirable as Blue Gin. Ms. Chahbazi and the members of Shabeh Jomeh D.C. have also suffered humiliation, embarrassment, and emotional pain and suffering as a result of Mr. Hess's conduct.

## COUNT ONE
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

33.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

34.   Ms. Chahbazi, a person of Persian and Middle Eastern race and descent, is a member of a legally protected class of persons. The members of Shabeh Jomeh D.C. are also comprised predominantly of persons of Persian and Middle Eastern race and decent.

35.   Mr. Hess represented that he had the authority to negotiate a contract with Ms. Chahbazi and Shabeh Jomeh D.C. on behalf of Blue Gin. Pursuant to that authority, and as Blue Gin's agent, Mr. Hess proceeded to deny and deprive Ms. Chahbazi and Shabeh Jomeh D.C. equal access to the Blue Gin and the right to enter into a contract on equal, non-discriminatory terms. As noted, Mr. Hess conditioned the right of Ms. Chahbazi and Shabeh Jomeh D.C. to hold their monthly and quarterly events at the Blue Gin on Ms. Chahbazi's and Shabeh Jomeh's agreement to (i) limit their activities to the second floor of the Blue Gin, (ii) to segregate themselves from other Blue Gin's other patrons, and (iii) to provide a guaranteed minimum of $3,200 in food and beverage charges for each event.

36.   Mr. Hess intentionally and purposefully imposed these discriminatory conditions, and discriminated against Ms. Chahbazi and Shabeh Jomeh, because of the race, ethnicity, color, national origin and/or religion of Ms. Chahbazi and Shabeh Jomeh D.C.

37.   The discrimination engaged in by Mr. Hess, through the intentional imposition of discriminatory terms and conditions, was an overt act that concerned the making of a contract between Blue Gin and Shabeh Jomeh D.C. As a result of these discriminatory conditions, which

8

were not imposed on other Blue Gin patrons, Ms. Chahbazi and Shabeh Jomeh were denied the opportunity to enter into a contract with the Blue Gin on equal, non-discriminatory terms.

38. The discriminatory acts engaged in by Mr. Hess were done with malice and/or reckless indifference to the plaintiffs' federally-protected rights.

39. As a result of the actions of Mr. Hess, the plaintiffs suffered embarrassment, humiliation, emotional distress and economic damages.

## COUNT TWO
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS, 42 U.S.C. § 1985

40. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

41. Mr. Hess and Blue Gin agreed to cater more to a white crowd. This conspiracy denied Shabeh Jomeh D.C. and Ms. Chahbazi equal, non-discriminatory access to Blue Gin and deprived Shabeh Jomeh D.C. and Ms. Chahbazi of the right to enter into a contract with the Blue Gin on non-discriminatory terms.

42. Pursuant to this conspiracy, at the January 11, 2007 meeting, Mr. Hess informed Ms. Chahbazi of his (and Blue Gin's) plan to whiten the crowd at Blue Gin.

43. In particular, Mr. Hess, in sum or substance, told Ms. Chahbazi:

> As you know, Georgetown is a predominantly white neighborhood. Blue Gin hired me because they want to cater more to that predominantly white crowd, and they know that I can bring them that crowd.

44. Blue Gin further empowered Mr. Hess to negotiate the terms on which Shabeh Jomeh D.C. and Ms. Chahbazi would be permitted to hold their events at the Blue Gin. Pursuant to this authority, Mr. Hess refused to provide Shabeh Jomeh D.C. and Ms. Chahbazi equal, non-

discriminatory access to Blue Gin. Specifically, Mr. Hess conditioned access to the Blue Gin on Shabeh Jomeh D.C. and Ms. Chahbazi's agreement to (i) limit their activities to the second floor of the Blue Gin, (ii) to segregate themselves from other Blue Gin's other patrons, and (iii) to provide a guaranteed minimum of $3,200 in food and beverage charges for each event.

45. Mr. Hess did not act alone in discriminating against Shabeh Jomeh. Other employees and managers of Blue Gin were aware of the negotiations and had expressly put Mr. Hess in charge of them. Mr. Hess also told Ms. Chahbazi that he had discussed the terms of his offer with Blue Gin's management and that he and Blue Gin had collectively agreed on the terms of the offer.

46. The agreement between Mr. Hess and Blue Gin denied plaintiffs the right to contract with Blue Gin, a right afforded by the Civil Rights Act of 1866, 42 U.S.C. § 1981, and additionally protected by 42 U.S.C. 1985. This denial was based on plaintiffs' ethnic, racial and/or religious background.

47. As a result of the overt actions of Mr. Hess and his alleged co-conspirator(s) the plaintiffs suffered embarrassment, humiliation, emotional distress and economic damages.

## COUNT THREE

### VIOLATION OF THE D.C. HUMAN RIGHTS ACT

48. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

49. The D.C. Human Rights Act ("DCHRA") § 2-1402.01 recognizes that

> [e]very individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate

in all aspects of life including, but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service and in housing and commercial space accommodations.

50. The DCHRA also recognizes that it shall be an unlawful discriminatory act to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" on the basis of, *inter alia*, race, national origin, or religion. *Id.* § 2-1402.31(a)-(a)(1).

51. The plaintiffs were entitled to an equal opportunity to participate fully in activities at Blue Gin night club.

52. By imposing discriminatory terms and conditions on future contracts, Mr. Hess denied plaintiffs the equal opportunity to fully participate in cultural aspects of life afforded to plaintiffs through the statute.

53. By imposing discriminatory terms and conditions on future contracts, Mr. Hess directly or indirectly denied plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Blue Gin.

54. As a result of the actions of Mr. Hess, the plaintiffs suffered embarrassment, humiliation, emotional distress and economic damages.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request that the Court enter an Order:

1. Declaring the defendant intentionally violated § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and § 1985 of the Civil Rights Act of 1871, 42 U.S.C. § 1985.

2. Declaring that the defendant violated the D.C. Human Rights Act, D.C. Code § 1402.01.

3. Enjoining the defendant from engaging in any act or practice which, on the basis of race, color, religion, and/or national origin, denies or abridges any rights secured by the Civil Rights Act of 1866, and/or the D.C. Human Rights Act.

4. Requiring the defendant to undergo counseling and diversity training to prevent further discriminatory conduct by the defendant.

5. Awarding compensatory damages sufficient to compensate plaintiffs for their economic damages and their humiliation, embarrassment, inconvenience and emotional pain and suffering caused by the defendant's unlawful acts.

6. Awarding punitive damages sufficient to punish the defendant for his discriminatory actions, and to deter the defendant from further engaging in discriminatory actions.

7. Disgorging any and all revenues and/or profits accumulated by the defendant resulting from his engagement in unlawful practices. A measure of such disgorgement would include all payments made to the defendant with respect to each Thursday night that Blue Gin retained Mr. Hess as a promoter as well as any revenues and/or profits accumulated by the defendant as a result of his association with and position as promoter at Blue Gin.

8. Requiring the defendant and all other persons, known or unknown, in active concert or participation with him, to take such affirmative steps as may be necessary to remedy the past unlawful conduct.

9. Plaintiffs further pray for such additional relief as the interests of justice may require, including attorneys' fees, pursuant to 42 U.S.C. § 1988, and the costs and disbursement of this action.

## JURY TRIAL DEMAND

The plaintiffs request a jury trial on all of the above claims.


Respectfully submitted,

_____
Colin R. Kass, D.C. Bar No. 460630
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W., Suite 1200
Washington, D.C. 20005
(202) 879-5000

        Isabelle M. Thabault, D.C. Bar No. 318931
        Robert M. Bruskin, D.C. Bar No. 164293
        Washington Lawyer's Committee for
        Civil Rights and Urban Affairs
        11 Dupont Circle, N.W., Suite 400
        Washington, D.C. 20036
        (202) 319-1000

        *Attorneys for Plaintiffs*

Scott M. Abeles, D.C. Bar No. 485501 (admission to this court pending)
Reyna S. Walters (D.C. Bar Application granted, formal admission pending)
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W., Suite 1200
Washington, D.C. 20005
(202) 879-5000

*Of Counsel*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Meenoo Chahbazi and Shabeh Jomeh D.C.
11001

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __11001__
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
Jamie Michael Hess

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __11001__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Colin R. Kass
Kirkland & Ellis LLP
655 15th Street N.W., Suite 1200
Washington, D.C. 20005
(202) 879-5000

Case: 1:08-cv-00047
Assigned To : Bates, John D.
Assign. Date : 1/10/2008
Description: Civil Rights-Non-Employ.

**JURY ACTION**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
⊙ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ● E. General Civil (Other)      OR      ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(1)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ⊗ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. § 1981; 42 U.S.C. § 1985; and D.C. Code § 2-1402.01: The defendant violated the plaintiffs' civil rights protected by federal and state law.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ To Be Determined   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE January 8, 2008   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.